

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JLG:SSA
F. #2018R02286

*610 Federal Plaza*
*Central Islip, New York 11722*

November 25, 2024

By ECF

The Honorable Joan M. Azrack
United States District Judge
Eastern District of New York
610 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. Ryan Gosin
               Criminal Docket No. 22-447 (JMA)

Dear Judge Azrack:

      I write on behalf of the government in the above-captioned matter, to respectfully move, pursuant to 18 U.S.C. § 3148(a), for immediate revocation of release of defendant Ryan Gosin, in light of the defendant's commission of additional federal crimes while on bail.  See 18 U.S.C. § 3148(b)(1)(A).

      As set forth herein, following the defendant's sentencing by this Court on February 14, 2024, the government learned of additional criminal activity committed by the defendant, which was of the same ilk as that to which he pleaded guilty in this case.  Egregiously, this additional criminal activity appears to have begun shortly before his plea in this case, and it continued after his plea – all times during which he was subject to release on bail conditions.[1]  For the reasons set forth below, the government respectfully submits that the defendant must not be permitted to remain released on bail pending surrender for service of his sentence, and should be ordered to surrender himself to the custody of the Attorney General and the Bureau of Prisons forthwith.

    I.    Factual Background and Sentencing

      The Court is familiar with the facts of this case.  As more fully outlined in the Presentence Investigation Report ("PSR") and the government's sentencing submission (ECF No. 32), the defendant engaged in several overlapping fraudulent schemes: disaster relief fraud related

---

[1] The government continues to investigate these crimes and may bring additional charges against the defendant.

to the Covid-19 pandemic, which he pled guilty to; and used car fraud related to dealers, buyers and investors, which the government requested the Court view as relevant conduct for the purposes of sentencing. The conduct, charged by Information, occurred from approximately 2015 to 2020.

On or about October 17, 2022, the defendant pled guilty before Magistrate Judge Wicks to three counts of the Information, relating to the EIDL fraud. Upon his guilty plea, he was released on a $25,000 bond, secured by his sister, who acted as a suretor (ECF No. 7, 10).[2] Your Honor accepted his guilty plea on October 31, 2022. After several adjournment requests from the defense, the Court sentenced Gosin on February 14, 2024.

At the outset, the Court indicated it would adopt the government's Guideline estimation from the plea agreement: 57 to 71 months (Tr. 3:11-18), which was lower than the PSR's calculation of 87 to 108 months. The government's calculation included only the (intended) EIDL loss and did not include the massive used car fraud. The Court indicated its belief that "the government's recommendation [of 37 to 46 months] under the circumstances of this case, quite candidly, is a gift." (Tr. 4:5-7).

Defense counsel still raised objections to this generous calculation, and indicated that Gosin potentially desired a *Fatico* hearing on the issue of actual versus intended loss for the EIDLs. (Gosin applied for almost $1 million in EIDLs; he actually received disbursements of $147,500). Counsel argued, on the record, that Gosin's "subjective intent" warranted using the lesser amount he actually received, and not the full amount he applied for, because "once he got the two grants and the loan, which totaled the $147,500, that was it. He did not get any more money. He didn't try to get any more money. He got that money and that was the end of it." (Tr. 10:10-20).

However, the government had evidence indicating that after Gosin received undeserved EIDL money, he continued to apply for additional loans. The Court allowed the parties to confer off the record. The government then indicated that it had shown counsel records demonstrating that "after the loan was funded for the $134,500, in addition to an advance of $8,000, [the defendant] continued to apply for Covid relief loans on at least five separate dates after that." (Tr. 13:9-13). Gosin, after being confronted with his clear misrepresentation to the Court, withdrew his objection to the loss and guidelines calculation. (Tr. 14:18-24). The Court adopted government's suggested range from the plea agreement: 37 to 46 months. (Tr. 15:7-10).

The thrust of Gosin's arguments was that the Court should impose a non-custodial sentence because of his daughter's struggles with addiction, and his role in helping her through this difficult situation. The Court responded to this issue with empathy and practicality: although it sentenced Gosin to 24 months of incarceration, it postponed his surrender date by one year so he could "continue to assist in [his] daughter's recovery for that year." (Tr. 29:13-21).

---

[2] Notably, by continuing to commit crimes, Gosin exposed his sister, who signed on as a suretor for his release, to serious consequences, as she was warned by Judge Wicks at the arraignment that she was responsible for the full amount of the bond should Gosin violate any of its terms.

And in rejecting Gosin's request for a probationary sentence, the Court explained that "the defendant's chronic criminal history is troubling to me. In terms of the nature and circumstances of the crime, there are few mitigating circumstances . . . here is an individual for whom just punishment and specific deterrence is critical. A custodial term is required, given these crimes and the defendant's incorrigibility in terms of his past criminal conduct." (Tr. 28:9-25).

II.  The Defendant's Additional Criminal Conduct While On Release

Several months after the defendant was sentenced, the government learned that, before and after his guilty plea in federal court, he had financed and sold two expensive cars by forging two lien releases, leading to his immense profit at the hands of the bank's loss. This was identical to the conduct he was charged with in the Information, but did not plead guilty to.

On September 29, 2022, Santander Bank financed $75,375 for a 2022 Jeep Grand Cherokee (the "Cherokee") for purchaser "TM Construction/R Gosin." Gosin made six monthly payments toward the loan. On January 26, 2023—after his guilty plea—he sold the Cherokee with a fraudulent lien release (see Exhibit, Jeep Lien Release, attached hereto). Santander Bank suffered a loss of $74,372.

On January 18, 2023, Santander Bank financed $65,438 for a 2022 Dodge Durango (the "Durango") for TM Construction/R Gosin." Gosin made two payments, and on March 15, 2023, he sold the Durango. When he stopped making payments, Santander Bank learned that Gosin's lien had been removed, without him paying it off, and a new lien had been issued against the Durango without Santander Bank's knowledge. Santander Bank suffered a loss of $65,439.

III.  Revocation and Remand are Required by Law

A.  Standard of Review

A defendant "who has been found guilty of an offense and who is awaiting imposition or execution of sentence" ordinarily "shall . . . be detained . . . unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community." 18 U.S.C. § 3143(a).

Under the Bail Reform Act, the consequences for a violating a condition of pretrial release include "revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). On the government's motion, the Court may issue a warrant for the defendant's arrest and require that he be presented to answer for his violation. § 3148(b). Upon the defendant's return on a warrant, the Court "shall enter an order of revocation and detention" upon: (1) a finding of probable cause that the defendant has committed a crime while on release or clear and convincing evidence that the person has violated any other condition of release; and (2) a finding that there is no condition or combination of conditions of release that will assure the defendant will not flee or pose a danger to the safety of any other person or the community or the person is unlikely to abide by any condition or combination of conditions of release. See id. Furthermore, "if there is probable cause to believe that, while on release, the person committed a Federal, State or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." Id.

B. <u>Discussion</u>

Here, Gosin has demonstrated that he must be detained immediately, because he continued to commit *the very same crimes* he was charged with and sentenced for. While on bond, both before his plea and after, he committed multiple additional federal felonies by engaging in the same used car wire fraud scheme that brought him before this Court in the first place. As the government was not aware of these additional crimes at the time the plea agreement was executed, it did not have an opportunity to withdraw his plea offer given the obvious breach.

Gosin's egregious conduct, and his dishonesty and deception with the Court, demonstrate that he should no longer receive the benefit of the Court's accommodation. He has shown utter disrespect for the law and for this Court. It is clear that the Court's sentence and the prospect of incarceration has not deterred him from continuing to commit additional crimes. Moreover, while recognizing the tragic nature of his daughter's death, the government submits that the sole reason the Court had for allowing him a delayed surrender date is no longer applicable.

Gosin has proven that he cannot, and will not, be deterred. He committed the crimes for which he was charged here soon after his release after serving a 70-month sentence for mortgage fraud in an earlier case (in fact, some of the charged fraud occurred while on federal supervised release (PSR ¶ 45)). He used his family members' names, including his daughter's, without their knowledge, on criminal EIDL applications. He used fraudulent lien releases to dupe financial institutions after he pled guilty on this case. At sentencing, his counsel claimed to this Court that Gosin did not fill out further applications after he received money – which was proven demonstrably false. He has now committed a crime while on pre-sentence release, and the community is at risk from his continued scams and frauds.

IV. <u>Conclusion</u>

For the foregoing reasons, the government respectfully requests that the Court revoke the defendant's bond and order him to surrender immediately for service of his sentence. Alternatively, the government seeks a hearing on these issues at the Court's earliest convenience.

Respectfully submitted,

BREON PEACE
United States Attorney

By: *Samantha Alessi*
Samantha Alessi
Assistant U.S. Attorney
(631) 715-7894

cc: Clerk of the Court (JMA) (by ECF)
Randy Zelin (counsel for defendant) (by ECF)